IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 18, 2012

## JACOB STEPHEN LOVE V. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2009-A-919    Cheryl Blackburn, Judge**

---

**No. M2012-00135-CCA-R3-PC - Filed December 7, 2012**

---

The Petitioner, Jacob Stephen Love, appeals the Davidson County Criminal Court's denial of his petition for post-conviction relief from his convictions for two counts of attempted aggravated sexual battery and effective eight-year sentence. On appeal, he contends that his guilty pleas were unknowingly and involuntarily made because he was denied the effective assistance of counsel. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which NORMA MCGEE OGLE and D. KELLY THOMAS, JR., JJ., joined.

Jason M. Chaffin, Nashville, Tennessee, for the appellant, Jacob Steven Love.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; and Bret Gunn, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The record reflects that the Petitioner was charged with five counts of aggravated sexual battery and three counts of child rape. Pursuant to agreement, he pleaded guilty to two counts of attempted aggravated sexual battery. According to the State's recitation of the facts at the guilty plea hearing:

> [The Petitioner] was residing with the victim. . . . Her date of
> birth is 3-29-97, a child less than thirteen years of age. [The
> Petitioner] . . . was residing with her, her sibling, and her

mother, and he was her mother's boyfriend at the time. . . . [O]n two separate incidents . . . [the Petitioner] did attempt to engage in unlawful sexual contact with the child named in the indictment. These events happened at their residence, which [was] located here in Davidson County.

The Petitioner received consecutive four-year sentences.

The judgments reflect that the Petitioner was sentenced to community supervision for life following the expiration of his sentence pursuant to Tennessee Code Annotated section 39-13-524 and that the Petitioner was required to register as a sexual offender. The transcript of the plea submission hearing shows that the trial court advised the Petitioner that the consequences of his guilty pleas included registering as a sex offender and lifetime supervision after his release from confinement. When the trial court asked if the Petitioner understood these consequences, his response was, "Yes, ma'am." The court stated that it noted on the petition to enter a plea of guilty that it advised the Petitioner of both consequences. When the trial court asked the Petitioner if he read the guilty plea petition, he responded, "I read it myself. And I had questions, and it was explained to me." He agreed his questions were explained to his satisfaction.

At the post-conviction hearing, the Petitioner testified that although the State's discovery packet was about three inches thick, counsel failed to review it with him. He said the discovery materials included a criminal history of Jacob J. Love, who was not the Petitioner. He said counsel believed it was the Petitioner's criminal history until eight months later when the Petitioner asked an investigator to compare the Petitioner's fingerprints with Jacob J. Love's fingerprints.

The Petitioner testified that the witness statements contained different versions of events. He said that he talked to counsel about the recording counsel received eight days after the Petitioner's arrest and that the victim admitted on the recording that the victim made up the allegations. He said that although counsel sent the prosecutor an email about the recording, counsel told the Petitioner "none of that matters, because if it goes to trial, they can change their mind, take the plea."

The Petitioner testified that counsel confused the facts of his case with another client's case and that counsel did not know the number of offenses for which the Petitioner was indicted. He said that at his plea hearing, he reviewed the plea agreement with counsel and that he told the trial court he understood the agreement. He said, though, that counsel did not "fully discuss" his being on community supervision for life. He said he feared going to prison and had never faced a prison sentence before the instant charges. He said counsel told

him "that all [the Petitioner] would be subject to was lifetime supervision." He said counsel defined lifetime supervision as requiring the Petitioner to go to the police department every four months to register as a sexual offender. He said that after he pleaded guilty, he learned he was required to wear an ankle bracelet, to meet with a parole officer, and to undergo psychological or psychiatric treatment for the remainder of his life. He said he understood he was required to register with the sexual offender database. He said counsel never discussed a prerelease psychological evaluation. He said that counsel told him he would be denied parole the first time and that he would probably receive parole the second time.

The Petitioner testified that in August 2009, he wanted to go to trial but that counsel did not want a trial. He stated that they argued about whether to go to trial and that counsel refused "to present the case in chief." He said counsel told the Petitioner approximately twenty-five times that the Petitioner would be convicted at a trial. He said that although he was charged with two Class C felonies, counsel told him the range of punishment was two to four years. He said that counsel was a "plea attorney" rather than a trial attorney and that counsel told him that counsel had not tried "these types of cases." He said counsel advised him that he should accept the plea offer because sexual offenses were difficult to win at a trial.

The Petitioner testified that he pleaded guilty because he was not familiar with the criminal justice system and his attorney told him to plead guilty. He said he did not know the consequences of his pleading guilty when he pleaded guilty. He said that he and counsel argued several times over counsel's representation and that he attempted to fire counsel because counsel refused to review the discovery materials. He said counsel introduced him to co-counsel and told him the trial court would not allow the Petitioner to fire counsel. He said that to his knowledge, counsel did not file a motion requesting permission to withdraw as his counsel.

On cross-examination, the Petitioner testified that he received the State's discovery package and clarified that counsel refused to review the materials until two months before the trial date. He said counsel agreed that after the investigator examined the fingerprints, the criminal history included in the discovery materials was not the Petitioner's criminal history. He said that eight months before his arrest, the victim's brother molested the victim and that counsel said this information did not matter. He said that anytime he raised issues with the discovery materials, counsel said the information did not matter.

The Petitioner testified that at the guilty plea hearing, the trial court asked him if he was satisfied with counsel's work and that he responded counsel "were perfect." He agreed that he knew about the evidence the State and the defense would have presented at a trial before he pleaded guilty and that he knew what the witnesses would have testified to at a

trial. He agreed that counsel had the same information he had before he pleaded guilty and that counsel's advice was to accept the plea offer. He said he knew the decision whether to plead guilty was his, not counsel's. He agreed counsel only offered their opinions on whether he should plead guilty.

The Petitioner testified that he did not ask counsel about the sexual offender registry and that he thought the registry and lifetime supervision were the same. He said that counsel did not discuss community supervision for life or lifetime supervision at any time before he pleaded guilty. He said he first heard about lifetime supervision from the trial court when he pleaded guilty.

The Petitioner testified that he knew he pleaded guilty to two Class C felonies. He denied counsel told him that he was pleading to Class D felonies. The Petitioner's only issue was the length of sentence, although the range of punishment for a Class C felony was three to six years. He agreed he received two four-year sentences. When asked how counsel confused his case with another client's case, he said counsel told him "eleven people found Raul guilty, one hung the jury. [The Petitioner was] coming behind Raul . . . remember what happened to Raul." He said counsel's statement showed "coercion" but agreed the statement did not show counsel was confused. He said that counsel compared the two cases and agreed that it was counsel's job to inform the Petitioner of how similar cases were resolved.

Upon examination by the trial court, the Petitioner testified that he did not understand the difference between community supervision for life and lifetime supervision. The Petitioner said he did not understand that his registration on the sexual offender database was separate from community supervision.

Counsel testified that he had been licensed to practice law since 1998 and that he only practiced criminal defense work. He agreed he was appointed to represent the Petitioner and said he reviewed the discovery materials numerous times with the Petitioner. He said he did not understand the Petitioner's testimony that counsel refused to review the discovery materials until two months before trial. He said he told the Petitioner that they would meet more often for trial preparation two months before trial.

Counsel testified that with regard to the victim and her family, the Department of Children's Services investigated previous allegations of sexual abuse that did not involve the Petitioner and that he attempted to tell the Petitioner that these previous allegations were irrelevant to the instant charges. He said he attempted to explain to the Petitioner that whether a jury believed the victim mattered at a trial. He said that with regard to the incorrect criminal history, the Petitioner believed the State wanted to prosecute him because

-4-

of the criminal history. He said he attempted to explain to the Petitioner that the prosecutor charged him because of the victim's allegations, not because of any criminal history. He said that to his knowledge, he did not confuse the Petitioner's case with another client's case, although he said he could have misstated the number of counts in the indictment.

Counsel testified that he had long conversations about the plea offer with the Petitioner. He said that although there were weaknesses in the State's case, he told the Petitioner that it was "very risky" to go to trial. He said the Petitioner faced life imprisonment if convicted by a jury and agreed the plea agreement was for two consecutive four-year sentences to be served at thirty percent. He said that he told the Petitioner the decision to go to trial was the Petitioner's and agreed that when the Petitioner asked for his opinion, he told the Petitioner that he believed a jury would convict him. He said that he never told the Petitioner to plead guilty and that at one point, the Petitioner's case was scheduled for a trial.

Counsel testified that his frustration with the Petitioner resulted from the Petitioner's changing his mind daily about whether to accept the plea offer or go to trial and that he told the Petitioner that the Petitioner had to decide if he wanted to accept the offer or go to trial. He said that he and the Petitioner had a heated exchange and that he asked co-counsel to work with the Petitioner. He said he "bowed out" of the Petitioner's case when co-counsel became involved. He said that he had never tried a case like the Petitioner's but that co-counsel had.

Counsel testified that he discussed community supervision for life with the Petitioner and that he discussed the consequences of the Petitioner's pleading guilty to a sexual offense, including sexual offender registration, sexual offender requirements, and supervision. He said his file included a copy of the sexual offender probation guidelines, and he thought he showed the guidelines to the Petitioner. He said he did not go into detail about everything that would be required of the Petitioner.

On cross-examination, counsel testified that the Petitioner always denied his guilt and that he believed the Petitioner became frustrated because the Petitioner wanted a trial but knew a trial was risky. He denied dismissing as unimportant anything the Petitioner raised and said he discussed each topic with the Petitioner. He said he interviewed the people the Petitioner suggested and met with the people the Petitioner wanted him to meet. He said he reviewed the video recording of the victim's statement and discussed it with the Petitioner. He denied telling the Petitioner that the Petitioner could not go to trial or that counsel would not try the Petitioner's case. He said he gave the Petitioner his opinion with regard to the outcome of a trial and told the Petitioner it was the Petitioner's decision. He agreed that

with regard to the Petitioner's community supervision, there were "probably some specifics" that the Petitioner did not know.

Co-counsel testified that she had been licensed to practice law since 1984 and that she had only done criminal work. She said she told the Petitioner that if he decided to plead guilty, the Petitioner would be required to register as sexual offender and would be subject to lifetime supervision. She did not recall the amount of detail in which she discussed lifetime supervision. She believed the Petitioner knew the consequences of his guilty plea.

On cross-examination, co-counsel testified that she represented the Petitioner close to the time of the guilty plea and that she reviewed the case and was briefed about the status of the case. She said that she began working on the Petitioner's case because of communication issues between counsel and the Petitioner and that she discussed the Petitioner's accepting the plea offer and going to trial. She said she considered the offer to be "extraordinarily good." She said she told the Petitioner that sexual offense cases were difficult to win at trial, that the State made a good offer, and that the Petitioner had to make the decision.

The trial court credited counsel's testimony at the post-conviction hearing. The court found that although counsel may have misstated the number of counts in the indictment, counsel knew the facts of the Petitioner's case. The court found that the issue of whether the State included the Petitioner's criminal history in the discovery materials was resolved by the investigator's research. With regard to the Petitioner's contention that he was coerced into pleading guilty, the trial court credited counsel and co-counsel's testimony that they advised the Petitioner to plead guilty but told the Petitioner it was his decision. The trial court noted that the guilty plea hearing transcript showed that the Petitioner told the court that he understood he had the right to a trial but that he elected to enter a plea.

With regard to community supervision for life, the trial court found that counsel and co-counsel discussed lifetime supervision with the Petitioner generally but did not address the specific requirements. The court noted that at the guilty plea hearing, the Petitioner told the court that counsel discussed the "collateral consequences of his plea, which included sex offender registration and lifetime supervision." The court found that at the guilty plea hearing, the Petitioner was advised that he would have to undergo sexual offender treatment. The court found that counsel informed the Petitioner of community supervision for life. The court concluded that the Petitioner's guilty pleas were made knowingly and voluntarily and denied relief.

On appeal, the Petitioner contends that his guilty pleas were not knowingly and voluntarily made because counsel did not sufficiently inform him that he was subject to

community supervision for life. The State responds that the trial court properly denied relief. We agree with the State.

The burden in a post-conviction proceeding is on the petitioner to prove his grounds for relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2012). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456-57 (Tenn. 2001). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457. Post-conviction relief may only be given if a conviction or sentence is void or voidable because of a violation of a constitutional right. T.C.A. § 40-30-103 (2012).

Under the Sixth Amendment, when a claim of ineffective assistance of counsel is made, the burden is on the Petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993). In other words, a showing that counsel's performance fell below a reasonable standard is not enough because the Petitioner must also show that but for the substandard performance, "the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner will only prevail on a claim of ineffective assistance of counsel after satisfying both prongs of the Strickland test. Henley v. State, 960 S.W.2d 572, 580 (Tenn. 1997). The performance prong requires a petitioner raising a claim of ineffectiveness to show that counsel's representation fell below an objective standard of reasonableness or "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. The prejudice prong requires a petitioner to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability means a "probability sufficient to undermine confidence in the outcome." Id. When a petitioner pleads guilty, he must show a reasonable probability that, but for the errors of his counsel, he would not have pleaded guilty. See Hill v. Lockhart, 474 U.S. 52, 59 (1985); Adkins v. State, 911 S.W.2d 334, 349 (Tenn. Crim. App. 1994).

The United States Supreme Court has held that a plea must represent a "voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970). The court reviewing the voluntariness of a guilty plea must look to the totality of the circumstances. See State v. Turner, 919 S.W.2d 346, 353

(Tenn. Crim. App. 1995). A plea resulting from ignorance, misunderstanding, coercion, inducement, or threats is not "voluntary." Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). A petitioner's solemn declaration in open court that his or her plea is knowing and voluntary creates a formidable barrier in any subsequent collateral proceeding because these declarations "carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74 (1977).

In Tennessee, the imposition of community supervision for life is required by statute and is in addition to the punishment received for the commission of certain sexual offenses. See T.C.A. § 39-13-524 (2010). Our supreme court has stated that a "defendant must be apprised of the sentence that he will be forced to serve as a result of his guilty plea and conviction." Blankenship, 858 S.W.2d at 905. "[L]ifetime community supervision is a direct and punitive consequence of which a defendant must be informed in order to enter a knowing and voluntary guilty plea. . . ." Ward v. State, 315 S.W.3d 461, 475 (Tenn. 2010). Counsel's "failure to advise his or her client about the mandatory lifetime community supervision sentence . . . is deficient performance." Calvert v. State, 342 S.W.3d 477, 490 (Tenn. 2011).

The Petitioner relies on Chad Alan Parker v. State, No. M2007-02799-CCA-R3-PC (Tenn. Crim. App. July 31, 2008), in support of his contention that counsel provided ineffective assistance by failing to explain the details of community supervision for life. The case is distinguishable. There, counsel testified at the post-conviction hearing that he told the petitioner lifetime supervision involved certain restrictions, including where the petitioner could live and work after his release from confinement. Counsel learned after the petitioner pleaded guilty that more was required of the petitioner, and counsel conceded that he did not accurately represent the requirements to the Petitioner. After counsel informed the Petitioner of the significant differences, the petitioner said that he would not have pleaded guilty had he known the extent of the restrictions. In reversing the trial court's denial of relief, this court concluded that counsel "misinformed" the petitioner of the lifetime supervision requirements because counsel told the petitioner that he would have to do nothing in addition to participating in the sexual offender registry. Id. slip op. at 8-9.

In the present case, the Petitioner was not told his obligations upon release were limited to the sexual offender registry. Although the Petitioner testified that counsel told him he would only be required to report to the police every four months, the trial court credited counsel's testimony over that of the Petitioner. Counsel testified that he discussed with the Petitioner sexual offender registration, sexual offender requirements, and lifetime supervision. Although he believed there were specifics about the lifetime supervision the Petitioner did not know, counsel's file included a copy of the sexual offender probation guidelines, which he thought was shown to the Petitioner. Co-counsel testified that she discussed with the Petitioner the sexual offender registry and the lifetime supervision,

although she did not recall the details of their discussion. The Petitioner told the trial court at his plea submission hearing that his attorneys discussed his registering as a sexual offender and his lifetime supervision. The trial court discussed with the Petitioner that he might be required to undergo sexual offender treatment, and the Petitioner stated that he understood.

We conclude that the Petitioner was informed of the community supervision for life requirement and that his pleas were knowingly and voluntarily entered. The evidence does not preponderate against the trial court's factual findings. We conclude that counsel was not deficient and that the Petitioner is not entitled to relief.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE